## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERICH SCHERFEN and | : | CIVIL ACTION - LAW |
| RUBINA TAREEN, | : | |
| | : | |
| Plaintiffs | : | DOCKET No. |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT | : | |
| OF HOMELAND SECURITY; | : | |
| MICHAEL CHERTOFF, in his | : | |
| official capacity as Secretary of the | : | |
| Department of Homeland Security; | : | |
| FEDERAL BUREAU OF | : | |
| INVESTIGATION; ROBERT S. | : | |
| MUELLER, III, in his official | : | |
| capacity as Director of the Federal | : | |
| Bureau of Investigation; UNITED | : | |
| STATES DEPARTMENT OF | : | |
| JUSTICE; Michael B. Mukasey, in | : | |
| his official capacity as Attorney | : | |
| General; NATIONAL COUNTER | : | |
| TERRORISM CENTER; MICHAEL | : | |
| E. LEITER, in his official capacity as | : | |
| Director of the National Counter | : | |
| Terrorism Center; TERRORIST | : | |
| SCREENING CENTER; DONNA | : | |
| BUCELLA, in her official capacity as | : | |
| Director of the Terrorist Screening | : | |
| Center; TRANSPORTATION | : | |

SECURITY ADMINISTRATION;      :
KIP HAWLEY, in his official      :
Capacity as Administrator of the      :
Transportation Security      :
Administration; UNITED STATES      :
CUSTOMS AND BORDER      :
PROTECTION; W. RALPH      :
BASHAM, in his official capacity      :
as Commissioner of United      :
States Customs and Border      :
Protection; UNITED STATES      :
IMMIGRATION AND CUSTOMS      :
ENFORCEMENT; and JULIE L.      :
MYERS, in her official capacity as      :
Assistant Secretary of United      :
States Immigration and Customs      :
Enforcement,      :
      :
     Defendants      :

## VERIFIED COMPLAINT

  This civil rights lawsuit for declaratory and injunctive relief involves a

Muslim couple, Erich Scherfen and Rubina Tareen, who have found themselves in

a Kafkaesque situation. Although their experiences indicate that they are on a

federal government "watch list," the government now will not acknowledge their

listing. The electronic system that was purportedly set up to address errors on the

watch lists does not work—in fact, it appears to be a black hole, with citizen

complaints going in but without any resolution coming back out. For Plaintiffs, the

entire experience has been surreal. What is very real, however, is the harm that

they have suffered and will continue to suffer, including the imminent loss of Mr. Scherfen's ability to continue in his profession as commercial pilot.

Mr. Scherfen is an American-born United States citizen. He is a combat veteran of the first Gulf War and received an honorable discharge from the United States Army in 2006, after fourteen years of active service. Mr. Scherfen flew an airplane for the first time when he was only eighteen years old—he has piloted aircraft as his hobby, as his military duty, and, most recently, as his chosen career. Ms. Tareen is a naturalized United States citizen, having emigrated from Pakistan in 1974, when she was just seventeen years old. She has her own business, selling books about Islam through her website and at conferences.

In the post-September 11th world, various agencies of the United States government created their own terrorist watch lists in an attempt to make the country safer. These lists, however, are reportedly riddled with misinformation and are cloaked with a veil of secrecy. It is incredibly difficult, if not impossible, for individuals who suspect that their names appear on these lists to determine whether they are on a list and, if so, which list. Apparently, it is even harder to get off the lists. The administrative process established to allow individuals to challenge their inclusion on a list advises complainants to use their assigned tracking number to follow the progress of their inquiry, but then never actually assigns a tracking number, much less provides a substantive decision.

Mr. Scherfen and Ms. Tareen, who have no criminal history nor any ties to terrorist activity, are no longer free to travel as they wish—as free, proud United States citizens. For reasons that they do not fully understand, and that no one with the United States government will explain, they are stopped at airports and border crossings; they are singled out and embarrassed in front of fellow airline passengers; their belongings are searched; and they are detained for several hours at a time—and the government will not tell them why. Their experiences, however, indicate that they are being retaliated against because of their religious activities and their Muslim faith.

On September 1, 2008, Mr. Scherfen is going to lose his job as a commercial airline pilot because he is allegedly on a terrorist watch list. In fact, if Defendants' conduct is not addressed, Mr. Scherfen will lose not only his job, but his career. He is, after all, a pilot who is not allowed to fly.

In this action, Plaintiffs allege that Defendants' failure to provide any procedural due process and, more particularly a name-clearing hearing, to allow Plaintiffs to contest their continued designation on the watch lists violates their due process rights under the Fifth Amendment to the U. S. Constitution. Plaintiffs also allege that Defendants selected and maintained Plaintiffs on the watch lists because of their Muslim faith and attendant religious activities, which violates the Free Exercise Clause of the First Amendment, is intentional discrimination in violation

of the Fifth Amendment, and amounts to retaliation for constitutionally protected activity under the First Amendment.

## I.    THE PARTIES

1.    Plaintiff Erich Scherfen ("Mr. Scherfen") is an adult individual residing in Schuylkill County, Pennsylvania.

2.    Plaintiff Rubina Tareen ("Ms. Tareen") is an adult individual residing in Schuylkill County, Pennsylvania.

3.    Mr. Scherfen and Ms. Tareen are husband and wife.

4.    Defendant Department of Homeland Security ("DHS") is a department of the United States government and was created to develop and coordinate the implementation of a comprehensive national strategy to secure the United States from terrorist threats and attacks. Defendant Michael Chertoff is the Secretary of the DHS and is sued in his official capacity.

5.    Defendant Federal Bureau of Investigation ("FBI") is a department of the United States government and identifies individuals to be included in certain terrorist watch lists, including the "No Fly List" and "Selectee List." Robert S. Mueller, III is the Director of the FBI and is sued in his official capacity.

6.    Defendant Transportation Security Administration ("TSA") is a component of the DHS and is responsible for the regulation of security for highways, railroads, buses, mass transit systems, pipelines, ports, and airports. The

TSA screens passengers at airports and works with other agencies to maintain the "No Fly List" and "Selectee List." Defendant Kip Hawley is the Administrator of the TSA and is sued in his official capacity.

7. Defendant Customs and Border Protection ("CBP") is a component of the DHS and is responsibile for protecting the United States' airports, seaports, and land-border crossings. Defendant W. Ralph Basham is the Commissioner of CBP and is sued in his official capacity.

8. Defendant Terrorist Screening Center ("TSC") is a component of the FBI and maintains the Terrorist Screening Database. Defendant Donna Bucella is the Director of the TSC and is sued in her official capacity.

9. Defendant Department of Justice ("DOJ") oversees the TSC. Defendant Michael B. Mukasey, Attorney General, heads the Department of Justice and is sued in his official capacity.

10. Defendant Immigration and Customs Enforcement ("ICE") is a component of the DHS and is responsible for investigating possible violations of customs and immigration laws. Defendant Julie L. Myers is the Assistant Secretary of ICE and is sued in her official capacity.

11. Defendant National Counterterrorism Center ("NCTC") serves as the primary organization in the United States government for analyzing and integrating all intelligence possessed or acquired by the government pertaining to terrorism

and counterterrorism, and provides information and lists to the TSC. Defendant

Michael E. Leiter is the Director of the NTSC and is sued in his official capacity.

## II. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1357.

13. The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), because Plaintiffs reside in the Middle District of Pennsylvania and Defendants are officers and agencies of the United States.

## III. TERRORIST WATCH LISTS

15. Upon information and belief, the Terrorist Screening Database ("TSDB") is a compilation of approximately one dozen watch lists created, maintained, supported, modified, enforced, and/or contributed to by Defendants.

16. These watch lists include, *inter alia*, the "No Fly List," which is a list of individuals who are not permitted to board flights for travel by air, and the "Selectee List," which is a list of individuals who are to be subjected to heightened security prior to being allowed to board a flight for travel by air.

17. Upon information and belief, when individuals are screened at airports to board flights and at the United States border to enter the country by land, the

persons performing the screening check the TSDB and/or its component lists to determine whether the individual is identified on any watch list.

18.     The governmental entities and individuals involved in the creation, maintenance, support, modification, and enforcement of such watch lists, including Defendants, will not confirm or deny whether an individual is on a particular list or in the TSDB, nor the factors used to determine whether an individual should be placed or maintained on, or removed from, any list.

19.     The governmental entities and individuals involved in the creation, maintenance, support, modification, and enforcement of such watch lists, including Defendants, do not remove individuals from the TSDB and component lists even when it is appropriate to do so.

20.     The governmental entities and individuals involved in the creation, maintenance, support, modification, and enforcement of such watch lists, including Defendants, have not provided citizens with an effective mechanism through which they can challenge their inclusion in the TSDB and component lists.

21.     The governmental entities and individuals involved in the creation, maintenance, support, modification, and enforcement of such watch lists, including Defendants, are not training their employees to determine when modification or removal of a TSDB or component watch list record is necessary, nor do they have

policies in place to ensure that such modification or removal is properly implemented.

## IV.   OPERATIVE FACTS

### A.   Erich Scherfen and Rubina Tareen

22.   Mr. Scherfen is an American-born United States citizen who grew up in Long Branch, New Jersey, with his parents and sister.

23.   Mr. Scherfen is Muslim.

24.   Ms. Tareen was born in Pakistan.

25.   Ms. Tareen emigrated to the United States in 1974, when she was 17 years old.

26.   Ms. Tareen became a naturalized citizen of the United States on August 12, 1980.

27.   Ms. Tareen is also Muslim.

28.   Mr. Scherfen and Ms. Tareen are husband and wife.

29.   Mr. Scherfen enlisted in the United States Army in 1989. He served in various capacities with the military, including as an airborne-qualified infantryman in the 1991 Gulf War. Mr. Scherfen is a combat veteran and was awarded a Combat Infantry Badge for his service. During the course of his Army career, Mr. Scherfen served in the active military, the Army Reserves, and National Guard. He received an honorable discharge in 2006.

30.     Mr. Scherfen has been an airplane pilot for almost twenty years, as a civilian and as a soldier.  Apart from his military service, being a pilot is the only profession Mr. Scherfen has ever known.

31.     Mr. Scherfen secured his first employment piloting flights for a commercial airline in May 2007.

32.     The airline runs regional routes in Texas, the northeast, and the mid-Atlantic region.

33.     Ms. Tareen operates a business out of her home, through which she sells Islamic books and other media on topics such as comparative religion, including reconciliation and peace among differing faiths.  She often travels to mosques and religious conferences in connection with her business.

34.     Mr. Scherfen and Ms. Tareen are active members of the Islamic community.  They attend Islamic prayer services every week.  They speak publicly—at churches, colleges, mosques, conferences, and other forums—regarding comparative religion and Islam.

**B.     Difficulties Encountered While Traveling**

35.     On January 10, 2002, at Fort Rucker, Alabama, Mr. Scherfen was stopped by two FBI agents who informed him that they were told he might have information about "9-11," and further questioned him about his conversations with

his neighbor, an officer from Egypt. They also told Mr. Scherfen that he "wasn't a priority."

36.    On September 9, 2006, Mr. Scherfen presented at Harrisburg International Airport to board a flight to San Francisco in order to visit a family member who was ill. An American Airlines ticketing agent at Harrisburg International Airport told Mr. Scherfen that he was on a "List." Mr. Scherfen was, for the first time, subjected to increased security screening measures, requiring that he wait one hour before being permitted to board the flight.

37.    In or around September 2006, Ms. Tareen boarded an airplane at San Francisco International Airport in order to return home to Pennsylvania. She boarded the airplane without incident, but was then directed back off the plane by an agent who came running down the plane's center aisle calling her name. She was required to disembark and wait while the agent removed everything from her bags for examination. She was then allowed to re-board the airplane.

38.    On November 20, 2006, Mr. Scherfen presented at Newark Liberty International Airport to board a flight to Houston in order to attend a job interview for a position as a pilot. A ticketing agent at the airport told Mr. Scherfen that he was on the "Selectee List."

39.    Shortly before midnight on December 25, 2006, Mr. Scherfen, Ms. Tareen, and Ms. Tareen's two daughters were returning home from Toronto,

Canada in their private automobile when they were stopped at the border by agents from, upon information and belief, the DHS. The family had been at a religious conference in Toronto. The agents approached the family's van with their hands on their holstered guns. The agents directed the family out of their car and into a waiting area. Agents questioned Mr. Scherfen and Ms. Tareen, as well as her daughters, for two to three hours, while other individuals came and went through the waiting area. The agents questioned them about a variety of Islamic organizations In response to an explanation that the family had been at an Islamic conference, one of the agents said something to the effect of, "We know all about that conference." The agents also directed the family to produce all of the money that they were carrying. The agents then took Mr. Scherfen into a separate room, where he was questioned for another one to two hours alone, and again asked about Islamic organizations. The family was detained for approximately five hours, at which time they were released to enter the United States. When Mr. Scherfen, Ms. Tareen, and Ms. Tareen's daughters returned to their automobile in order to continue home, they found the contents of their vehicle, including boxes of Ms. Tareen's books that were offered for sale at the convention in connection with her business, in disarray. It was apparent that the agents had gone through all of their belongings.

40.     In or around October 2007, Mr. Scherfen, Ms. Tareen, and her daughter boarded an airplane to San Francisco. The TSA agent at the airport required that he proceed through additional screening, with no explanation as to the reason for doing so.

41.     Beginning in or around January 2008, Mr. Scherfen began to ride as a passenger on commercial flights in order to get to the next flight that he was scheduled to pilot. Pilots refer to this practice as "deadheading." When Mr. Scherfen boarded these flights, he was wearing his pilot's uniform and carrying his commercial pilot identification card bearing his photograph, job title, and pilot identification umber. On numerous occasions beginning in or around January 2008, gate agents informed him that he was on the "Selectee List" and laughed at the situation. Thereafter, the TSA officials to whom he was referred laughed as well, letting him through to board the flights.

42.     Ms. Tareen has family members residing in Pakistan and Qatar.

43.     On February 9, 2008, Ms. Tareen was scheduled to take a flight from Pakistan, where she had been visiting her mother, to New York City. When attempting to check in for her flight, Ms. Tareen was told that she was on the "No Fly List." Ms. Tareen was forced to wait for five hours, after which she was allowed to board a flight. Upon arriving in the United States, Ms. Tareen was met by federal agents who directed her to a waiting room, but did not explain why she

was being detained. An agent went through Ms. Tareen's luggage, examining its contents in detail. He confiscated several books, including her personal address/appointment book. Ms. Tareen was questioned at length. She was detained for approximately four hours, at which time her belongings were returned to her and she was permitted to continue home.

44. In April 2008, Ms. Tareen attempted to travel to Arizona. She was told by a ticketing agent at the Philadelphia International Airport that she is on "the list." Ms. Tareen was subjected to additional security measures and forced to wait in a room for several hours. The delay caused her to miss her scheduled flight, as well as the next available flight. When Ms. Tareen was finally allowed to leave, she returned home without traveling.

45. In July 2008, a man who identified himself as "Dave" with the "State Police" came to Mr. Scherfen and Ms. Tareen's home. Mr. Scherfen was not home, but "Dave" told Ms. Tareen that he wanted to talk more to Mr. Scherfen "about Islam." He also said that he thought he could "help" Mr. Scherfen and Ms. Tareen with their "problems." To the best of Ms. Tareen's recollection, this same man had visited their home in November 2006, purportedly to follow up on a report that he had received in May 2006 to the effect that Ms. Scherfen had modified his van in order to carry bombs, and in May 2007, to discuss Islam with Plaintiffs. During the November 2006 visit, Mr. Scherfen explained to "Dave" that

he had removed a seat from his van to carry boxes of books for Ms. Tareen's business.

### D.     Attempts to Address Difficulties with Authorities

46.     Following the December 25, 2006 incident, Mr. Scherfen wrote to the DHS, complaining about the difficulties Plaintiffs had encountered while traveling. He received no response to his letter.

47.     On May 5, 2008, Mr. Scherfen again wrote to the DHS regarding the difficulties he was experiencing.  (A true and correct copy of the May 5, 2008, letter is attached hereto as Exhibit "A".)

48.     Mr. Scherfen received a response from the DHS by letter dated June 17, 2008.  The letter stated that the DHS can neither confirm nor deny that he—or anyone else—is on any list.  (A true and correct copy of the June 17, 2008 letter is attached hereto as Exhibit "B".)

49.     In its June 17, 2008 letter, the DHS instructed Mr. Scherfen to file an inquiry through the DHS Traveler Redress Inquiry Program ("TRIP").  The letter stated that Mr. Scherfen would then receive a control number that he could use to track the progress of his inquiry.  The letter further indicated that if Mr. Scherfen did not receive any such control number, he was to contact DHS TRIP by email.

50.     Mr. Scherfen and Ms. Tareen each submitted separate DHS TRIP inquiries on June 17, 2008. (True and correct copies of their DHS TRIP inquires are attached hereto as Exhibit "C".)

51.     Mr. Scherfen and Ms. Tareen did not receive control numbers as represented by the DHS and, therefore, were unable to track the progress of their inquiries.

52.     In accordance with DHS instructions, Plaintiffs—through their counsel—followed up with DHS TRIP by electronic mail on July 9, 2008, requesting a control number, but did not receive a response.

53.     Neither Mr. Scherfen, nor Ms. Tareen, has received a control number or any information regarding the resolution of their respective DHS TRIP inquiries, despite the passage of sixty-three days since they filed their claims.

**E.      Mr. Scherfen's Suspension and Impending Termination**

54.     On April 29, 2008, Mr. Scherfen was advised by his employer that he is listed as a "positive match" on a TSA "List."

55.     Despite being employed as a commercial airline pilot for almost a full year as of that time, this was the first time Mr. Scherfen was informed by his employer that he was on any watch list.

56. Mr. Scherfen was placed on administrative leave and required to turn in his pilot identification card as a result of his purported appearance on a watch list.

57. Upon information and belief, Mr. Scherfen's employer attempted to resolve this issue with Defendants, but was ultimately informed that it was prohibited from allowing Mr. Scherfen to pilot an airplane and that Mr. Scherfen would have to resolve the issue on his own behalf.

58. On May 19, 2008, Mr. Scherfen's employer suspended him without pay. Mr. Scherfen was informed that he would be terminated effective August 1, 2008, if he was not able to resolve the issue.

59. Mr. Scherfen had not yet received a response to his DHS TRIP inquiry as of July 2008 and, therefore, he requested that his employer extend his suspension without pay prior to termination in order to give DHS TRIP additional time to respond to his inquiry. Mr. Scherfen's employer agreed to extend his suspension without pay to September 1, 2008.

60. If the difficulties associated with Mr. Scherfen's placement on any or all of Defendants' lists are not resolved, his employment will be terminated effective September 1, 2008. Mr. Scherfen will lose not only his income, but also any seniority that he has accumulated within the airline. He will be unable to pursue employment elsewhere because his chosen profession is, in fact, as a pilot.

Mr. Scherfen will lose not only this particular employment, but his career and opportunity to pursue his chosen profession.

61.  Defendants have acted with deliberate indifference to Plaintiffs' constitutional rights by knowingly over-classifying United States citizens and mischaracterizing the level of threat they pose to the United States.

62.  Defendants do not have in place a system that ensures accurate classification and identification, resulting in their reliance on erroneous and inconsistent data.

63.  Plaintiffs have not engaged in any conduct that would support their placement on any terrorist watch list.

64.  Plaintiffs have no criminal history, nor ties to any terrorist activity.

65.  Plaintiffs assert that based on their experiences as detailed above, Defendants' placement and maintenance of them on any watch list is based on their religious beliefs, activities and speech.

66.  An actual and immediate controversy has arisen and now exists between Plaintiffs and Defendants related to their respective rights and duties. Defendants have unlawfully failed to comply with constitutional requirements by engaging in the acts and omissions described in this Complaint. Plaintiffs are entitled to a declaration of rights with respect to this controversy.

67.     Defendants have acted, and continue to act, to deprive Plaintiffs of their constitutional rights.  Plaintiffs are suffering and will continue to suffer irreparable injury as a result of the policies and practices described in this Complaint unless those policies and practices are enjoined by this Court.  Plaintiffs have no adequate remedy at law and are entitled to injunctive relief against Defendants.

## V.    CLAIMS

### COUNT I

### PLACEMENT AND MAINTENANCE ON WATCH LISTS

### <u>Free Exercise and Retaliation (First Amendment)</u>

### <u>Discrimination (Fifth Amendment)</u>

68.     The allegations set forth in Paragraphs 1 through 67 above are incorporated by reference as if fully set forth herein.

69.     Upon information and belief, Defendants have included Plaintiffs on watch lists and in the Terrorist Screening Database, which has resulted in the harassment and difficulties set forth above, because they are Muslim and have been active in promoting their faith.  Accordingly, Defendants' actions constitute retaliation against Plaintiffs for the free exercise of their religion, a violation of the First Amendment to the United States Constitution that will continue in the future if Plaintiffs are not granted the relief demanded below.

70.    Defendants selected and placed Plaintiffs on the watch lists because of their religion, which constitutes intentional discrimination in violation of the Fifth Amendment to the United States Constitution.

71.    Defendants' conduct has had a chilling effect on Plaintiffs' expressive and religious liberty, an effect that will continue until the relief requested below is granted.

## COUNT II

## FAILURE TO PROVIDE NOTICE AND HEARING

### Procedural Due Process (Fifth Amendment)

72.    The allegations set forth in Paragraphs 1 through 71 above are incorporated by reference as if fully set forth herein.

73.    Plaintiffs have the right to be free from being falsely stigmatized as individuals associated with terrorist activity when, as here, the stigma causes a change in their legal status that affects their ability to travel and to work in their chosen professions.

74.    Plaintiffs are entitled to a legal mechanism that affords them notice and an opportunity to contest their inclusion on the terrorist watch lists.

75.    Defendants have violated Plaintiffs' rights without affording them due process of law and will continue to do so into the future if Plaintiffs are not afforded the relief demanded below.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

a.    A declaratory judgment that:

       i.    Defendants' conduct towards them violated and continues to violate the First and Fifth Amendments to the United States Constitution.

       ii.    Defendants' policies, practices, and customs violate the First and Fifth Amendments to the United States Constitution.

b.    An injunction requiring Defendants to remedy the

Constitutional violations identified above, including the removal of Plaintiffs

from any watch lists or databases that inhibit their travel in any manner.

d.    Attorneys' fees, costs, and expenses of litigation.

e.    Such other relief as the Court may deem just and proper.

Date: August 19, 2008                     Respectfully submitted,


 

                                     /s/ Amy C. Foerster
                                     Amy C. Foerster, Esq. (PA 77986)
                                     Emily H. Damron, Esq. (PA 205919)
                                     SAUL EWING LLP
OF COUNSEL:                     2 N. 2nd Street, 7th Floor
                                     Harrisburg, PA  17101
William W. Warren, Esq.            (717) 257-7573 (telephone)
SAUL EWING LLP                  (717) 237-7429 (fax)
2 N. 2nd Street, 7th Floor          afoerster@saul.com
Harrisburg, PA  17101             edamron@daul.com

/s/ Valerie A. Burch
Valerie A. Burch, Esq. (PA 92873)
AMERICAN CIVIL LIBERTIES
FOUNDATION OF
PENNSYLVANIA
105 N. Front Street, Suite 225
Harrisburg, PA   17101
(717) 236-6827 x12 (telephone)
(717) 236-6895 (fax)
vburch@aclupa.org


/s/ Witold J. Walczak
Witold J. Walczak, Esq. (PA 62976)
AMERICAN CIVIL LIBERTIES
FOUNDATION OF
PENNSYLVANIA
313 Atwood Street
Pittsburgh, PA  15213
(412) 681-7864 (telephone)
(412) 681-8707 (fax)
vwalczak@aclupa.org

*Attorneys for Plaintiffs,*
*Erich Scherfen and Rubina Tareen*

## VERIFICATION

I, Erich Scherfen, do hereby verify that the facts set forth in the foregoing *Complaint* are true and correct to the best of my knowledge or information and belief. This verification is made pursuant to 18 Pa. C.S. § 4904, relating to unsworn falsifications to authorities.

_Erich Scherfen_
Erich Scherfen

Date: 08/14/08

## VERIFICATION

      I, Rubina Tareen, do hereby verify that the facts set forth in the foregoing ***Complaint*** are

true and correct to the best of my knowledge or information and belief.  This verification is made

pursuant to 18 Pa. C.S. § 4904, relating to unsworn falsifications to authorities.

_Rube Tare_
_____
Rubina Tareen

Date:

# CERTIFICATE OF SERVICE

I, Amy C. Foerster, do hereby certify that on the date set forth below I

caused to be served upon the following parties of record a copy of the foregoing

*Complaint* via United States certified mail, return receipt requested:

| | |
|---|---|
| United States Department of Homeland Security Washington, D.C. 20528 | Michael Chertoff, Secretary United States Department of Homeland Security Washington, D.C. 20528 |
| Federal Bureau of Investigation 935 Pennsylvania Avenue Washington, DC 20535 | Robert S. Mueller, III, Director Federal Bureau of Investigation 935 Pennsylvania Avenue Washington, DC 20535 |
| United States Department of Justice Room 4400 950 Pennsylvania Avenue NW Washington, DC 20530-0001 | Michael B. Mukasey, Attorney General United States Department of Justice Room 4400 950 Pennsylvania Avenue NW Washington, DC 20530-0001 |
| National Counterterrorism Center 1500 Tyson McLean Drive McLean, VA 22102 | Michael E. Leiter, Director National Counterterrorism Center 1500 Tyson McLean Drive McLean, VA 22102 |
| Terrorist Screening Center 935 Pennsylvania Avenue Washington, DC 20535 | Donna Bucella, Director Terrorist Screening Center 935 Pennsylvania Avenue Washington, DC 20535 |

Transportation Security Administration
REDRESS
601 South 12th Street
Arlington, VA  22202-4220

Kip Hawley, Administrator
Transportation Security Administration
REDRESS
601 South 12th Street
Arlington, VA  22202-4220

United States Customs and Border
Protection
1300 Pennsylvania Avenue, N.W.
Washington, DC  20229

W. Ralph Basham, Commissioner
United States Customs and Border
Protection
1300 Pennsylvania Avenue, N.W.
Washington, DC  20229

United States Immigration and Customs
Enforcement
1300 Pennsylvania Avenue, N.W.
Washington, DC  20229

Julie L. Myers, Assistant Secretary
United States Immigration and Customs
Enforcement
1300 Pennsylvania Avenue, N.W.
Washington, DC  20229

***Via Hand Delivery***
Martin C. Carlson
Interim U.S. Attorney for the Middle
District
Federal Building
228 Walnut Street
Harrisburg, PA  17101

Date:  August 19, 2008

/s/ Amy C. Foerster
Amy C. Foerster